O

1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11    DEANNA L. BROWER,                      CASE NO. 2:10-CV-2299-JST (RZx)

12              Plaintiff,

13

14         vs.                               **ORDER DENYING DEFENDANT'S
                                             MOTION FOR SUMMARY
15    THE FRED S. SOEPRONO M.D. INC.,        JUDGMENT**

16    DEFINED BENEFIT PENSION PLAN et al.,

17              Defendant.

18

19
20
21
22
23
24
25
26
27
28

Defendant The Fred S. Soeprono M.D., Inc., Defined Benefit Pension Plan filed this Motion for Summary Judgment against Plaintiff Deanna L. Brower.  (Doc. 42.)  Plaintiff's Complaint alleged breach of the pension plan and seeks recovery of plan benefits, injunctive relief, declaratory relief, attorneys' fees, and statutory penalties.  Defendant Plan argues that Plaintiff is not a participant in the plan and therefore has no standing to make her claims.  For the reasons set forth below, the Court DENIES the Motion.  (Doc. 42.)

## I.      Standard of Review

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to particular materials in the record or showing that the materials cited do not establish that absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Reference to the record may include citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set out specific facts showing a genuine issue for trial.  *Id.*

1  **II.      Factual and Procedural History**

2

3         Plaintiff filed her Complaint on March 30, 2010.  On July 24, 2011, Defendant Plan

4  filed a Motion for Summary Judgment.  Plaintiff failed to file a timely Opposition,

5  therefore, the facts as set forth by Defendant in its Motion are undisputed.  Plaintiff was

6  employed by Fred Soeprono, M.D. Inc. ("Employer") as an office manager and medical

7  biller from August 8, 2000, until July 10, 2009.  (Undisputed Fact ("UF") 1.)  Employer is

8  a dermatology medical practice.  (UF 2.)  Employer sponsored the Fred Soeprono, M.D.,

9  Inc. Defined Benefit Pension Plan ("the Plan").  (UF 5.)  Dr. Soeprono ("Soeprono"), who

10  is the president of the Plan, is also brother-in-law to Plaintiff.  (UF 3, 8.)

11         The Plan was formed in December 2001 with an effective date of January 1, 2001.

12  (UF 6.)  As initially adopted, an employee may participate in the Plan if he is at least 21

13  years of age and completes one Year of Service.  (UF 7.)  The Plan requires participants to

14  complete at least 1,000 hours of work in a plan year to accrue benefits.  (UF 19.)  Although

15  not mentioned in the Motion, UF 16 states that under Article I(G) of the Plan, an employee

16  "enter[s] the Plan on the first day of the plan year nearest the date she [becomes] an

17  Eligible Employee."  (UF 16.)  Although not mentioned in the Motion for Summary

18  Judgment, the Plan was terminated on August 31, 2010.  (Decl. of Garrett H. Suemori ¶

19  11.)

20         Plaintiff was hired on August 8, 2000, and she worked over 1,000 hours between

21  August 2000 and August 2001.  (UF 15.)  Plaintiff was eligible to participate in the Plan as

22  of August 9, 2001.  (Id.)  Therefore, under the terms of the Plan, Plaintiff became a Plan

23  participant on January 1, 2002.  As of May 5, 2002, Plaintiff had worked 889.59 hours,

24  therefore, she had not yet accrued any benefits.  (UF 20.)  On May 5, 2002, Soeprono

25  amended the Plan to exclude two employees by name: Soeprono's wife and Plaintiff.  (UF

26  10, 18.)  The amendment was retroactive to be effective January 1, 2002.  (UF 10.)

27

28

3

1    **III.    Analysis**

2

3         "Congress expressly declared that a central policy goal in creating ERISA was to

4    protect participants' interests 'by requiring the disclosure and reporting to participants and

5    beneficiaries of financial and other information with respect thereto . . . and by providing

6    for appropriate remedies, sanctions, and ready access to the Federal courts.'"  *Chuck v.*

7    *Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2006) (quoting 29 U.S.C. § 1001(b)).

8    "In keeping with Congress' goal of providing 'ready access to the Federal courts,' we must

9    remain mindful that 'ERISA is remedial legislation which should be liberally construed in

10   favor of protecting participants in employee benefit plans.'"  *Id.* (quoting *Batchelor v. Oak*

11   *Hill Med. Grp.*, 870 F.2d 1446, 1449 (9th Cir. 1989)); *see also Shaw v. Delta Air Lines,*

12   *Inc.*, 463 U.S. 85, 90 (1983) (determining that ERISA is "designed to promote the interests

13   of employees and their beneficiaries in employee benefit plans").

14

15                    The term 'participant' means any employee or former employee

16                    of an employer, or any member or former member of an

17                    employee organization, who is or may become eligible to

18                    receive a benefit of any type from an employee benefit plan

19                    which covers employees of such employer or members of such

20                    organization, or whose beneficiaries may be eligible to receive

21                    any such benefit.

22

23   29 U.S.C. § 1002(7).  The Supreme Court has held that former employees may be

24   "participants" under section 1002(7) if they "'have . . . a reasonable expectation of

25   returning to covered employment' or . . . have 'a colorable claim' to vested benefits."

26   *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (quoting *Kuntz v. Reese*,

27   785 F.2d 1410, 1411 (9th Cir. 1986) (per curiam), *cert. denied*, 479 U.S. 916 (1986)).

28

                                                    4

1  "Whether a plaintiff is a plan participant is determined as of the time he files the lawsuit."

2  *Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir. 1995).

3      "A former employee who has neither a reasonable expectation of returning to

4  covered employment nor a colorable claim to vested benefits, however, simply does not fit

5  within the [phrase] 'may become eligible.'" *Firestone Tire*, 489 U.S. at 118 (quoting

6  *Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (2d Cir. 1985)).

7  Here, because the Plan ended on August 31, 2010, Plaintiff cannot establish that she has a

8  reasonable expectation of returning to covered employment.  Therefore, the Court must

9  determine if Plaintiff has "a colorable claim to vested benefits."

10     Defendant makes what appears to be a fairly straightforward argument.  Plaintiff

11  was never a "participant" in the Plan, because the Plan was amended retroactively to make

12  Plaintiff ineligible to join the Plan.  Moreover, even if Plaintiff could have been considered

13  a participant of the Plan while working at Employer, she never accrued any benefits.

14  Having never accrued any benefits, Plaintiff can have no "colorable claim to vested

15  benefits."  Defendant argues that Plaintiff therefore lacks standing to bring her claims.

16     When Soeprono amended the Plan on May 5, 2002, ERISA stated: "(1) An

17  applicable pension plan may not be amended so as to provide for a significant reduction in

18  the rate of future benefit accrual unless the plan administrator provides the notice

19  described in paragraph (2) to each applicable individual . . . ."  29 U.S.C. § 1054(h)(1)

20  (2000).[1]  "The term 'applicable pension plan' means . . . any defined benefit plan;"

21  therefore, based on the undisputed facts submitted by Defendant, the Court finds that

22  Defendant Plan was an "applicable plan" under the statute.  *See* § 1054(h)(8)(B).

23     "The term 'applicable individual' means, with respect to any plan amendment . . .

24  each participant in the plan . . . ."  § 1054(h)(8)(A).  Under the regulations issued by the

25  Secretary of the Treasury that were in effect on May 5, 2002, "[w]hether a participant or

26  ──────────────

27      [1] Throughout the Order, the Court refers to the versions of the United States Code and Federal
    Regulations that were in effect on May 5, 2002, the date of the amendment at issue in this case.

28

5

alternate payee [is required to receive notice under section 1054(h)] is determined based on all relevant facts and circumstances *at the time the amendment is adopted*."   63 Fed. Reg. 68,678, 68,682 (Dec. 14, 1998) (emphasis added).  Defendant admits that Plaintiff was eligible to participate in the Plan starting on August 9, 2001.  More importantly, from January 1, 2002, until May 5, 2002, Plaintiff was a "participant" in the Plan; until Defendant retroactively amended the Plan, Plaintiff had no reason to believe that she was not a participant in the Plan.  Therefore, the Court concludes that on May 5, 2002, the date on which the amendment was made by Soeprono, Plaintiff was a "participant" as defined by the regulations in place at the time of the amendment.

"For purposes of [§ 1054(h)], a plan amendment which eliminates or reduces any early retirement benefit or retirement-type subsidy (within the meaning of subsection (g)(2)(A)) shall be treated as having the effect of reducing the rate of future benefit accrual."  § 1054(h)(9).  Under the regulations in effect on May 5, 2002, "an amendment providing for the cessation of benefit accruals on a specified date and for the termination of a plan is subject to section [1054](h)."  63 Fed. Reg. at 68,683.  Here, it is undisputed that the amendment made by Soeprono eliminated Plaintiff's benefit accruals on a specified date; therefore, the Court concludes that the amendment at issue had the effect of "reducing the rate of future benefit accrual" as set forth by the statute.  *See* § 1054(h)(1). In short, the Court concludes that the amendment Soeprono made to the Plan to exclude Plaintiff from the Plan was subject to ERISA's notice requirements set forth in section 1054(h).

ERISA requires that the section 1054(h) notice "be written in a manner calculated to be understood by the average plan participant" and "be provided within a reasonable time *before* the effective date of the plan amendment."  § 1054(h)(2)-(3) (emphasis added). Under the regulations in effect in 2002, section 1054(h) "generally requires written notice of an amendment to certain plans that provides for a significant reduction in the rate of future benefit accrual . . . . The plan administrator must provide the notice *after adoption* of the plan amendment and *not less than 15 days before the effective date* of the plan

1   amendment." 63 Fed. Reg. at 68,680 (emphasis added).  Here, Defendant has not

2   established that Soeprono gave Plaintiff written notice of the amendment at any point in

3   time.  Moreover, Defendant has admitted that the adoption of the plan amendment took

4   place after the date the amendment purported to become effective, as it was an amendment

5   intended to make changes retroactively to the Plan.  Therefore, the Court concludes that

6   Defendant has failed to show that Soeprono complied with the notice requirements in place

7   in 2002.  *See* § 1054(h).

8           Finally, because Defendant has failed to establish that Soeprono complied with the

9   notice requirements in place in 2002, the Court concludes that the facts currently before

10  the Court do not show that Plaintiff's exclusion was valid:

11

12              In the case of any egregious failure to meet any requirement of

13              [1054(h)] with respect to any plan amendment, the provisions of

14              the applicable pension plan shall be applied as if such plan

15              amendment entitled all applicable individuals to the greater of

16              (i) the benefits to which they would have been entitled without

17              regard to such amendment, or (ii) the benefits under the plan

18              with regard to such amendment.

19

20  § 1054(h)(6)(A).  An "egregious failure to meet the requirements" of section 1054(h) may

21  be found "if such failure is within the control of the plan sponsor and is . . . (i) an

22  intentional failure" or "(ii) a failure to provide most of the individuals with most of the

23  information they are entitled to receive under [§ 1054(h)]," among other things.  §

24  1054(h)(6)(B).  The Court concludes that Soeprono, as both the plan sponsor and

25  administrator, had the ability to notify Plaintiff of the amendment.  Defendant has failed to

26  show that Plaintiff received such notice, or that such failure to notify was unintentional.

27  Therefore, the Court concludes that Defendant has not shown in its Motion that there was

28  not an "egregious failure to meet the requirements."  *See* § 1054(h)(6)(B).  Having

1 reviewed the terms of the plan, the Court concludes that if notice was not properly

2 provided to Plaintiff, Plaintiff would be entitled to benefits under the Plan as if no

3 amendment had been made. *See* § 1054(h)(6)(A).

4      Defendant's counsel admitted at oral argument that Defendant's argument relies on

5 the theory that the amendment to the Plan that excluded Plaintiff was valid and became

6 retroactively effective on January 1, 2002.  The Court concludes, however, that for the

7 amendment to be effective, Defendant needed to give proper notice to Plaintiff of the

8 amendment.  Because the Court concludes that Defendant has failed to establish that

9 Plaintiff did, in fact, receive notice of the amendment which excluded her from the Plan,

10 Defendant has not established that Plaintiff does not have a "colorable claim to vested

11 benefits."  *See Hurlic v. S. Cal. Gas Co.*, 539 F.3d 1024, 1039 (9th Cir. 2008).

12

13     **IV.**    **Conclusion**

14

15      For the foregoing reasons, the Court DENIES Defendant's Motion for Summary

16 Judgment.

17

18 DATED:  August 29, 2011

19                              **JOSEPHINE STATON TUCKER**

20                              JOSEPHINE STATON TUCKER

                             UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28